No. 18,991.

Dennis P. Hinchey, *Appellee,* v. William Starrett et al. (William Starrett, *Appellant*).

SYLLABUS BY THE COURT.

1. Evidence—*Demurrer Sustained—Motion for New Trial—Granted at Succeeding Term—No Error.* The pleading, while open to criticism for confusion of theories, stated a cause of action. The evidence, if undisputed, showed a right to recover in some amount. The court sustained a demurrer to the evidence and rendered judgment for costs. Within three days a motion for a new trial was filed, which was taken under advisement until the next term and then granted. *Held,* that the latter order was proper.

2. Fraudulent Representation—*Statement of Existing Fact.* It was alleged that by falsely and fraudulently pretending that one of the defendants was ready and anxious and financially able to take a certain tract of land at $1600 cash, although worth more, the plaintiff was defrauded into trading to the other for such land an automobile worth that sum. *Held,* that such pretence concerned an existing condition and was not a mere promise or opinion.

3. —— *Measure of Damages.* In such situation the measure of damages is the difference between the value of the automobile and the value of the land taken in exchange therefor.

4. MOTION—*To Strike Out Allegation of Answer—Averments of Petition Construed.* After extended pleadings had been filed and amended a motion to strike a certain allegation from the answer recited that the petition showed that the action was one to recover damages for misrepresentation of the character and value of the land, which motion was overruled. *Held,* that such expression thus used can not rightfully be regarded as an election to proceed upon the basis of the represented value of the land instead of the sum agreed to be paid therefor.

5. JOINT LIABILITY — *For Fraudulent Representations.* The plaintiff testified to the reiteration by both defendants of certain fraudulent representations, but on cross-examination stated that the last repetition by one of them was what induced him to make the trade. *Held,* that this might well be construed to mean that such last repetition was the climax of the fraudulent inducements rather than the sole operating influence.

Appeal from Shawnee district court, division No. 1; ALSTON W. DANA, judge. Opinion filed December 6, 1913. Affirmed.

*C. W. Burch,* and *B. I. Litowich,* both of Salina, for the appellant.

*Lee Monroe,* of Topeka, and *W. S. Roark,* of Junction City, for the appellee.

The opinion of the court was delivered by

WEST, J.: Action for damages. The second amended petition alleged in substance that the plaintiff received a letter from defendant Starrett inquiring whether he would trade an automobile which he then owned for land in Oklahoma, and requested a conference with him, and later Starrett orally offered to exchange a quarter section near Monroe; said that he owned a quarter near that town and that defendant Wharton stood ready to purchase it for $1600 cash; that upon the plaintiff's

refusal to trade Starrett requested him to write Wharton, which was done. Shortly thereafter Starrett telephoned the plaintiff from Salina, repeating the offer and request, and again repeated both in a conversation held at Junction City within a few days; that thus induced the plaintiff wrote Wharton and promptly received a reply that he had offered Starrett $1600 for the land but would prefer another quarter ten miles from Stringtown as it was covered by an oil lease which included other land adjoining which he was buying, and if the plaintiff could get this quarter he, Wharton, would take it. Replying to a written inquiry as to what he would give for the quarter last mentioned he wired "$1600"; that about this time Starrett represented to plaintiff that the quarter near Stringtown was good, level, fertile farm land with a large amount of valuable timber growing thereon, and was located in an oil-producing territory, was reasonably worth between $1800 and $2000, that he was the owner thereof and that Wharton was well acquainted therewith, was willing, able and anxious to purchase it for $1600 cash, and was a thoroughly reputable, reliable and financially responsible business man; that on account of some former trouble Starrett's wife would not join in a deed to Wharton; that by these statements the plaintiff was induced to meet the defendants at McCracken, Rush county, where Starrett verbally reiterated his statements and Wharton corroborated them; the latter stating that he owned several other tracts adjoining the Stringtown quarter and had considered oil drilling in the neighborhood, and that if plaintiff would exchange his automobile for the land he, Wharton, would pay him therefor $1600, and he entered into writing to that effect and gave a check for $25 as earnest money; that thereafter Starrett reiterated his statements and the plaintiff entered into a written agreement to exchange his automobile for the land and delivered the former to Starrett who later turned over the deed from

one Ringland for the land; after this was done plaintiff executed and tendered to Wharton a deed and abstract showing proper title and demanded payment of the purchase price, without avail, Wharton being financially worthless; that all of these statements and representations were false, and known to both of the defendants to be false, at the time they were made; that the land was rough, sterile and unfit for farming, the timber thereon worthless; that it was not underlaid with oil or in any oil-producing territory, and was not worth to exceed 50 cents an acre; that the car was worth $1600.

A demurrer to this pleading was overruled, and Starrett answered by a general denial expressly disclaiming any authority for any acts or statements made by Wharton and alleging that the plaintiff had expressed satisfaction with the exchange of property, which was made after an independent investigation of the facts by him and upon advice of counsel. Wharton made default. The motion to strike out certain portions of this answer was overruled and a reply by way of general denial was filed. A trial was had, a demurrer to the evidence overruled, likewise a motion to instruct a verdict for defendant Starrett, and after the latter had introduced a part of the testimony of one witness the court reconsidered and sustained the demurrer to the plaintiff's evidence. Within three days thereafter the plaintiff moved for a new trial and to set aside the order sustaining a demurrer, which motion was taken under advisement until the next term and then sustained. From this order defendant Starrett appeals. In plaintiff's motion attacking the answer he asked that the allegation that he had not tendered a conveyance to the defendant be stricken out for the reason that it was not a matter of defense or responsive to any issue in the case, "this being an action in which plaintiff's amended petition shows that he has elected to affirm the exchange for the land in question and sues

Hinchey v. Starrett.

for damages for fraudulent misrepresentation of the character and value of said land."

It is contended that the plaintiff's pleadings were so indefinite that his theory of the case could not be determined therefrom; that they contained no allegation of the value of the land if it had been as represented, and therefore no basis for proof of the proper measure of damages; that no such proof was offered; that if the claim be against Starrett for Wharton's failure to pay, the record does not disclose Wharton's insolvency or Starrett's knowledge thereof, and that the demurrer to the evidence having been sustained and the action dismissed at the January term the court could not at the April term grant a new trial and reinstate the action.

Whatever confusion or uncertainty may be shown in the second amended petition, we have no difficulty in holding that it stated a cause of action, for if the plaintiff's allegations be taken as true certainly the defendants were liable to him in some amount.

Counsel argue that it was essential to state what the land would have been worth if as represented, while the plaintiff contends that as both defendants represented that it was worth, and Wharton stood ready to pay at once, $1600 cash, which was the sum asked for the machine, and which both defendants pretended the plaintiff would receive therefor by the operation of buying this land from Starrett and at once conveying it to Wharton, all he need do is to show how much less than $1600 it was in fact worth. We agree with the latter contention. The evidence disclosed that the land was not worth much above $1.50 an acre, that it was not even owned by Starrett, or desired by Wharton who had no intention of taking it. From so much of the evidence as appears in the record presented, one would have to be blind not to see that the defendants cooperated in a fraudulent scheme whereby they procured the plaintiff's car, and it would serve no purpose

for the latter to show what the land would have been worth had the representations of either borne the remotest semblance of truth. Hence the rule in *Speed v. Hollingsworth,* 54 Kan. 436, 38 Pac. 496, relied on by the defendant, that the measure of damages is the difference between the actual and represented value of the land, does not so directly apply as to be controlling. Here the fraud consisted largely, if not entirely, in making the plaintiff believe that by using the land as an instrument of the transfer he would really be selling his car for $1600 cash. The important thing stated and believed was not that the land was worth $1600, but that Wharton actually stood ready, able and anxious to pay that sum for it; and the land passing from Starrett through Hinchey to Wharton was a mere medium of exchange used to accomplish the supposed *bona fide* plan of buying Hinchey's car for $1600, but the real *mala fide* purpose of getting it for practically nothing. The assurance made by both defendants of the ability and intention of Wharton to take the land at once at the cash sum named was a statement touching an existing condition, and not a mere promise or opinion. (*The State v. Cowdin,* 28 Kan. 269; *The State. v. Briggs,* 74 Kan. 377, 86 Pac. 447, and Note, 7 L. R. A.; n. s., 278; *Smith v. The State,* 116 Ga. 587, 42 S. E. 766; *Commonwealth v. Drew,* 153 Mass. 588, 27 N. E. 593; *People v. Huggins,* 97 N. Y. Supp. 187.)

While the quoted words used in the motion of plaintiff to strike out a certain allegation of the answer taken alone might bear the literal interpretation contended for by opposing counsel, still, when considered together with the allegations and prayer of the second amended petition, we think it was not intended as an election to proceed for the recovery of the difference between the real and the represented value of the land, but as an assertion that the action was not for rescission. A motion, not an election, was the matter at hand, and the former should not be construed into the

latter by reason of the mere use of some inapt language.

The point is pressed that Wharton's insolvency was not proved. The record is illuminated, however, with his own explanation of his financial condition, which is quite sufficient to convince one that a judgment against him would not add materially to the assets of its holder. Aside from this, his present desire, intention and ability to take the land for the price of the car were assiduously pressed upon the plaintiff by Starrett, who knew full well that at least no such desire or intention existed, and the mere matter of financial ability was only one element of the false pretense deliberately and successfully made.

It is insisted that the plaintiff swore, on cross-examination, that but for Starrett's assurance when returning from McCracken that Wharton was good and would pay he would not have made the trade, and hence that he could not have relied on the statements as to the value and character of the land. We do not think that this meant or was intended to mean that he was uninfluenced by the former representations—only that this last assurance, like the pleadings of the importunate widow, removed all further hesitation.

That a motion for a new trial filed at one term may be taken under advisement and granted at the succeeding term was decided in *Life Ins. Co. v. Twining*, 19 Kan. 349. The trial court, upon reconsideration, concluded that the plaintiff's claim was supported by some evidence, and that the demurrer thereto had been improperly sustained, in which conclusion we find no error.

The defendant is justified in complaining that the plaintiff's pleadings were more fertile in prolixity than in perspicuity, but we hardly think the remarkable ability shown in the numerous attacks and attempts to require clearness of theory and fixity of position demands the entire defeat of the plaintiff.

The order granting a new trial is affirmed.